Deborah S. JOHNSON, Appellant,

v.

TOWN OF ELIZABETHTOWN, Russell Grimes, Wallace Leinwand, Robert Beasley, Esther Huntley, Kenneth Kornegay, Henry Bostic, William Keith, and James Freeman, Appellees.

No. 85–1547.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1985.

Decided Sept. 11, 1986.

W. Osborne Lee, Jr. and David F. Branch, Jr. (Lee and Lee on brief) for appellant.

M. Ann Anderson (Guy F. Driver, Jr.; Womble, Carlyle, Sandridge and Rice on brief) for appellees.

Before HALL and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

ERVIN, Circuit Judge:

This case arises out of the discharge of Deborah S. Johnson from her job as Town Clerk of Elizabethtown, North Carolina. Johnson claims that she was dismissed in retaliation for constitutionally protected criticisms of the town government. She also claims that she was slandered by Town Administrator James Freeman. Finding an insufficient causal link between the protected speech and Johnson's dismissal, we affirm the trial court's order of judgment notwithstanding the verdict in favor of Elizabethtown. We dismiss the state tort claim against Freeman, a pendent party, for lack of federal subject matter jurisdiction.

I.

On February 7, 1983, Johnson became Elizabethtown's Town Clerk for a probationary period of six months. Relatively early in her tenure, Johnson questioned three preexisting office practices. She challenged Freeman's use of a facsimile signature stamp on town checks because she, not Freeman, was technically the town finance officer. She refused to pay the town tax collector's regular fees until Freeman authorized the payments in writing, and she refused to notarize right-of-way easements that had not been signed in her presence. These criticisms were the source of some friction between Johnson and her assigned "guide," Freeman.

Johnson also complained about her long hours and salary. She resented Freeman's monitoring of her lunch break and vacation days. Heated exchanges between Johnson, and Freeman and Elizabethtown's Mayor, William Keith, were not uncommon. Johnson's relationship with Freeman's secretary was also hostile.

When Johnson suspected that Freeman and Keith wanted her dismissed, she appeared before the Town Board to discuss her salary and termination rumors. She then began documenting her encounters with Freeman and Keith. One such encounter occurred on July 12, 1983, when Freeman approached Johnson in the presence of another employee and said, "I am looking to see what you've been stealing," or substantially similar words. (Joint Appendix at 515). This statement, which Freeman asserts was intended as a joke, is the source of Johnson's slander claim. On another occasion, Johnson approached Freeman with a tape recorder and attempted to record a conversation about Johnson's job performance.

On August 1, 1983, the Town Board extended Johnson's probation. When the extension was announced, Johnson spoke to the Board at length about her problems on the job, ranging from Freeman's tone of voice and monitoring of her working hours to use of the facsimile signature stamp. In mid-August, Freeman's secretary resigned because of office tension and her inability to work with Johnson. The Board ultimately dismissed Johnson, citing as the reason incompatibility which interfered with the office's functioning. The decision was made under a town policy permitting dismissal of probationary employees without appeal "if it is felt that the employee is not capable of satisfactorily performing the assigned duties." (Joint Appendix at 44).

Johnson then filed this lawsuit, alleging that she was dismissed in retaliation for constitutionally protected speech, specifically her statements about the facsimile stamp, the tax collector, and the right-of-way notarizations. She also alleged that Freeman slandered her. The jury returned a verdict for Johnson. The trial court granted Elizabethtown's motion for judgment notwithstanding the verdict on the dismissal claim because there was no proof that the protected speech motivated Johnson's discharge.[1] The trial court refused to order judgment notwithstanding the verdict on the slander count, upholding the jury award of $100 compensatory and $4,800 punitive damages.

## II.

In order to prevail on her constitutional claim, Johnson must prove (1) that her speech was protected under the first amendment and (2) that the protected speech was the "but for" cause of her discharge. *Jurgensen v. Fairfax County, Virginia,* 745 F.2d 868, 878 (4th Cir.1984). First amendment protection attaches only when the public employee's speech deals with a "matter of legitimate public con-

cern" and the employee's interest in speaking is not outweighed by the employer's " 'interest in effective and efficient fulfillment of its responsibilities to the public.' " *Jones v. Dodson,* 727 F.2d 1329, 1334 (4th Cir.1984) (quoting *Connick v. Myers,* 461 U.S. 138, 150, 103 S.Ct. 1684, 1692, 75 L.Ed.2d 708 (1983) ).

■ The majority of Johnson's statements do not meet even the "public concern" threshold for first amendment protection. Her complaints about long hours, Freeman's monitoring of her lunch breaks and vacation days, and Freeman's attitude were statements on "matters of personal interest." This court will not scrutinize the wisdom of personnel decisions made in response to unprotected statements. *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690.

■ Only Johnson's comments about the facsimile stamp, tax collector, and notarization procedure meet the "public concern" threshold for constitutional protection. An ultimate finding of protection is not guaranteed, however, because of *Connick's* balancing requirement. *See id.* at 154, 103 S.Ct. at 1693. (In some situations, a supervisor need not tolerate speech on matters of public concern if "he reasonably believe[s] [the speech] would disrupt the office, undermine his authority and destroy close working relationships."). Application of *Connick's* balancing analysis to this case is unnecessary, however, because the requisite causal link between the arguably protected speech and Johnson's dismissal has not been established.

A jury verdict on a causation question must be supported by "reasonable probability," not mere "possibility." *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 242 (4th Cir.1982). Judgment notwithstanding the verdict is appropriate if causation rests on speculation instead of proof. *See id.* In this case, only Johnson's conjecture links her arguably protected speech to the discharge. There is no proof that the facsimi-

---

**1.** The trial court also conditionally granted a new trial, if its order of judgment notwithstanding the verdict was overturned. Because we uphold the j.n.o.v. order, it is not necessary to

address the propriety of a new trial. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2540, at 618 (1971).

le stamp, the tax collector, and notarization issues were discussed in the Board's discharge deliberations. At most, testimony established that some Board members were aware of some of these issues. Those officials considered Johnson's challenge to preexisting practices peripheral, however.

Moreover, the evidence was overwhelming that Johnson's discharge was based on reasons other than her arguably protected speech. Elizabethtown's commissioners testified uniformly that incompatibility, which interfered with smooth town administration, was the reason for the discharge. Immediately after her appointment, Johnson was advised not to be too aggressive and to treat fellow employees as friends. Nevertheless, Johnson openly accused Freeman and Keith of being "out to get her," and Freeman's secretary resigned because of Johnson's hostility. In light of these events, the conclusion that but for her protected speech, Johnson would have retained her job is wholly unreasonable. The grant of judgment notwithstanding the verdict in favor of Elizabethtown was appropriate.

### III.

■ Freeman cross-appeals from the trial court's refusal to grant judgment notwithstanding the verdict on the slander count and the award of punitive damages. Because we lack federal subject matter jurisdiction over Johnson's slander claim against Freeman, we do not reach the merits of this issue.[2]

Johnson has asserted no federal claim against Freeman, who was sued in his individual capacity.[3] Our only arguable jurisdictional basis is pendent party jurisdiction.[4] Three requirements must be satisfied for a proper exercise of pendent party jurisdiction: (1) the existence of a "common nucleus of operative fact" under U.S. Const. art. III, *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); (2) the absence of congressional negation of jurisdiction "expressly or by implication" in the relevant jurisdictional statute, *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976); and (3) the existence of prudential concerns favoring the exercise of jurisdiction, *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. *See generally Lee Construction Co. v. Federal Reserve Bank*, 558 F.Supp. 165, 170–71 (D.Md.1982).

■ At the very least, the prudential part of the test is not satisfied in this case. We are particularly troubled by a needless federal construction of North Carolina's evolving punitive damages and slander law. *See Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

**2.** The parties' failure to address the jurisdictional problem does not preclude our consideration. Regardless of the parties' agreement, a federal court must satisfy itself that it has jurisdictional power to decide the case. *See Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804).

**3.** Freeman now contends that he was sued in his official capacity. The complaint never states that the suit is against Freeman in his official capacity, and the trial court treated the claim as being against Freeman personally. We find no reason in the pleadings or the proceedings to interpret a complaint stating only an individual's name as creating a suit against the individual in his official capacity. *Cf. Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985) (permitting post-trial amendment of pleadings to create an "official capacity" lawsuit when the record indicated that case was tried on that theory).

**4.** Pendent party jurisdiction is involved when the issue is one of "impleading additional *parties* with respect to whom there is no independent basis of federal jurisdiction." *Aldinger v. Howard*, 427 U.S. 1, 6, 96 S.Ct. 2413, 2416, 49 L.Ed.2d 276 (1976) (emphasis in original). Pendent claim jurisdiction exists when "additional *claims* between parties with respect to whom there is federal jurisdiction" are litigated. *Id.* In this case, Freeman is a nondiverse party against whom no federal claims have been asserted. Accordingly, the problem is one of pendent party, not pendent claim, jurisdiction.

Our reliance on *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a pendent claim case, is nevertheless appropriate. In *Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422, the Supreme Court explained that both Article III and the relevant jurisdictional statute must permit an exercise of pendent party jurisdiction. The requirements of Article III are set out in *Gibbs*. Consequently, analysis of the pendent party jurisdictional problem overlaps in some respects with analysis of the pendent claim problem.

Our decision is buttressed by the fact that Johnson could have tried all her claims together in state court. *See Aldinger,* 427 U.S. at 15, 96 S.Ct. at 2420 (quoting *Kenrose Manufacturing Co. v. Fred Whitaker Co.,* 512 F.2d 890, 894 (4th Cir.1972)). Because of our disposition of the prudential requirement, we reach neither the Article III nor statutory construction questions.

Accordingly, the judgment of the district court is affirmed on Johnson's constitutional claim. The judgment on Johnson's pendent party state tort claim is reversed and remanded with instructions to dismiss for lack of subject matter jurisdiction.[5]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

HALL, Circuit Judge, concurring:

I agree in all respects with the results achieved in the majority opinion. I write only to clarify what I perceive to be a misstatement of the law of pendent jurisdiction with regard to Johnson's state tort claim.[1] The majority identifies three factors which must be independently satisfied before pendent jurisdiction over a state claim is acquired by a federal court. The majority then holds that a failure to satisfy the factor which it describes as "prudential concerns" requires that Johnson's state claim be dismissed for lack of subject matter jurisdiction.

To the extent the majority finds that jurisdiction over the defamation claim was lacking below, I must disagree. In my view, the question with regard to this issue turns not upon an inquiry into the district court's power but rather into the limits of its discretion.

In order to exercise pendent jurisdiction over a question of state law, a federal court must have some colorable justification for applying its authority in a matter that would otherwise be entrusted solely to the sovereignty of the state. The Supreme Court in *Gibbs* found justification in circumstances where a federal and state claim share a "common nucleus of operative fact." Subsequently, the Court in *Aldinger* added a requirement that the exercise of such jurisdiction not contravene the intent of Congress. On those two pillars, pendent jurisdiction rests.

The discussion of prudential concerns on which the majority relies is found in a paragraph in *Gibbs* in which the Supreme Court stated "[t]hat power need not be exercised in every case in which it is found to exist ... pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." 383 U.S. at 726, 86 S.Ct. at 1139. Clearly, the Court's statement that "[n]eedless decisions of state law should be avoided" was made in the context of analyzing the proper exercise of an existing power. I believe it is incorrect, therefore, to say that prudential concerns alone could deprive the district court of subject matter jurisdiction. An absence of prudential concerns is simply not a jurisdictional prerequisite.

My conclusion on the scope of the district court's jurisdiction does not, as I have indicated, require that I disagree with the decision to reverse the judgment on the state tort claim. The majority correctly notes that on the facts of this case, federal intrusion into an evolving area of North Carolina state law was needless. Assuming that jurisdiction was soundly based upon both a "common nucleus of operative fact"[2] and an absence of contrary congressional intent, the exercise of that jurisdiction by the district court in this instance exceeded the sound limits of discretion. For that reason, I concur in the result reached by the majority.

From the discussion and the choice of cited authority, I believe it is clear, however, that the majority position is based upon an analysis of pendent claim jurisdiction.

**2.** I believe that a strong argument can be made that there was an insufficient nexus of fact between Johnson's personal conflict with her supervisor and her discharge by the town's policy making Board. Had the majority chosen to

**5.** This jurisdictional analysis also applies to Johnson's state tort claims against pendent party defendant Keith and against defendants Keith and Freeman acting in concert. For reasons unrelated to jurisdiction, the district court did not submit these claims to the jury. Their merits were not raised on appeal.

**1.** The majority characterizes this issue as involving a question of pendent party jurisdiction.

base its holding on the absence of jurisdiction on that point, I would have agreed. In light of my conclusion on the limits of discretion, I have chosen, however, not to explore that issue further.