869 F.2d 593
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Howard BARNARD, Plaintiff-Appellant,
and
Willie E. Thompson, Ruth Beasley, Christine Roach, Wanda
Stroud, and Ruth Stanley, Dollie Crisp;
Plaintiffs-Appellants,
and
JoAnn Rogers Craig, Plaintiff-Appellant,
v.
BOARD OF COMMISSIONERS OF CLAY COUNTY, NORTH CAROLINA,
Harrell Moore, Frank Leon Woodard, Jimmy Johnson,
individually and in their official capacities as
Commissioners of the Clay County North Carolina Board of
Commissioners, Defendants-Appellees.
 No. 88-3503.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 4, 1988.
Decided: Feb. 3, 1989.
 
 J. Hue Henry, for appellants.
 Clayton Monroe Custer (Womble, Carlyle, Sandridge & Rice; Merinda Swanson Woody, on brief), for appellees.
 Before SPROUSE, ERVIN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Following their November, 1986 election, the Clay County Board of Commissioners fired the plaintiff-appellants from their jobs with the County. Appellants then filed Sec. 1983 actions, alleging that they were fired on political patronage grounds in violation of their First and Fourteenth Amendment rights. The defendant-appellees moved for summary judgment, and the district court granted that motion. We affirm the district court's grant of summary judgment.
 
 I.
 
 2
 On November 4, 1986 the defendants-appellees, Jimmy Johnson, Harrell Moore, and Frank Woodard, all registered Republicans, were elected to fill the three positions on the Clay County, North Carolina Board of Commissioners. These men replaced a previously all-Democratic Board.
 
 
 3
 At the time of the appellees' election the County had 13 nonelected employees. Twelve were registered Democrats and one was a registered Republican. All of the appellants herein, except Ruth Beasley, are registered Democrats. While Ms. Beasley is a registered Republican, the record shows that she "functioned" as a Democrat, and in fact openly campaigned for Democrats, during the relevant time-frame.
 
 
 4
 Shortly after their election the Commissioners decided to attempt to reduce the cost of providing county services by privatizing certain county functions. These functions had previously been performed by several county employees, among them the appellants.
 
 
 5
 At the December 8, 1986 meeting of the new Board, Roy H. Free, a registered Democrat, presented a proposal for the privatization of county cleaning services for $25,000 annually. The actual bid was submitted in the name of Roy T. Free, the son of Roy H. Free and a registered Republican, for two reasons. First, the son was just starting out in business and needed to build a record for himself. Second, Roy H. Free testified that to some extent he was afraid his affiliation with the Democratic party, and particularly a 1982 vote-selling scandal, would affect his ability to procure the contract. It was Roy H. Free, however, who appeared before the Commission to make the proposal.
 
 
 6
 The Board accepted the Frees' bid for a temporary six-month period ending June 30, 1987. The contract carried an automatic renewal option which the Frees exercised on June 1, 1987. The Frees' hiring resulted in the termination of appellants Stroud, Beasley, Roach, and Stanley, who performed cleaning services for the county.
 
 
 7
 On December 9, 1986 the Commission reconvened and awarded a contract for the performance of county maintenance duties to Larry Ledford, a Republican. The contract was awarded on a temporary six month basis, and the cost to the county was $18,000 per year. This action resulted in the termination of appellants Barnard and Thompson, county maintenance workers.
 
 
 8
 On June 8, 1987, the Commission issued a public invitation for bids on a multi-item contract to cover three formerly separate county services: Recreation Park Manager, Building Maintenance, and Switchboard operations. The contract was to be awarded to the lowest bidder for the complete three item contract. Single-item bids would be considered only if no bids were received for the entire three-item contract. All appellants received notice of these facts.
 
 
 9
 The County received three combined bids for the performance of these services. Narvel Garrett, the unsuccessful Republican candidate for sheriff, submitted the lowest bid and it was accepted. The Board then terminated Larry Ledford's contract for Building Maintenance and appellant Craig's employment for Park Management, effective June 30, 1987.
 
 II.
 
 10
 Appellants contend that they were fired solely because of their political party affiliations. Appellees deny that the terminations were politically motivated and contend that, in any event, the privatization and streamlining of county services constitute an independently valid reason for the discharges.
 
 
 11
 In granting appellees' motion for summary judgment, the district court found that appellants' evidence raised "no more than a speculative possibility" that they were discharged for political patronage reasons. Thus, appellants failed to meet the test of evidentiary sufficiency applied to causation--motivational issues. The district court also found that, even if appellants had met the applicable evidentiary standard, summary judgment would still be proper because appellees had proved a politically unrelated and independently effective motive for the discharges. We agree with the district court.
 
 III.
 
 12
 The Supreme Court, over a decade ago, established the rule that a governmental entity may not fire a public employee because of the employee's political affiliations. Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547, (1976). A short time later the Court formulated a two-part test to be applied in "mixed motive" cases, where an employee alleges she was fired for exercising her first amendment rights, but the employer claims a different motive gave rise to the dismissal. Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, (1977). First, the employee must present proof that the constitutionally protected activity was the motivating or "but for" factor in the decision to fire her. If such proof is presented, the burden shifts to the employer to show that a motive unrelated to the employee's protected conduct prompted the discharge, and that this unrelated motive was an "independently effective" one. 429 U.S. at 287.
 
 
 13
 The test of evidentiary sufficiency applied by this circuit in determining causation-motivational issues requires that any inferences drawn from the evidence must be supported by a "reasonable probability" and not "mere possibility." See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-42 (4th Cir.1982); Jones v. Dodson, 727 F.2d 1329, 1339 (4th Cir.1984); Johnson v. Town of Elizabethtown, 800 F.2d 404, 406 (4th Cir.1986). Appellants established three facts to support the allegation that their dismissals resulted from their political party affiliations. First, that appellants and appellees belong to different political parties. Second, that the appellees' decision to privatize certain county services resulted in the termination of the appellants. And finally, that the contracts for these services were awarded to members of the appellees' party.
 
 
 14
 Additional facts in the record, however, effectively counter any inference that appellants' discharge was politically motivated. With the exception of the cleaning contract, the contracts for the newly privatized services were open for everyone to bid on, regardless of their political affiliation. The results of the bidding process were made public, and the services contract was, in fact, awarded to the lowest bidder. Five of the seven appellants did not submit bids at all. Those appellants who entered bids submitted only single item bids, despite the fact that the Commission had explicitly solicited multi-item bids. Finally, while the cleaning contract was not "put up" for a bid, and while it was awarded to a Republican, it was awarded based upon a proposal submitted by an active Democrat. Furthermore, the Republican recipient of this contract is in fact employed by his Democratic father, who directly benefits from the contract. This fact was known to the appellees.
 
 
 15
 Given these facts, any conclusion that the decision to privatize certain county services was motivated by a desire to terminate the appellants because of their political affiliation amounts to no more than "mere speculation."
 
 
 16
 An additional factor weighing in appellees' favor is this court's decision in Jones v. Dodson, 727 F.2d 1329 (1984). The Jones court stated that, in mixed motive cases, a lack of widespread patronage dismissals by the governmental entity will weigh heavily against any inference of politically motivated discharges. 727 F.2d at 1339. It does not appear that appellees were engaging in "general housecleaning on raw patronage grounds." Indeed, they hired a Democrat as County Tax Collector, and following privatization seven of eight county employees were Democrats.
 
 IV.
 
 17
 Even if the appellants could prove that they were fired in part because of their political party affiliation, summary judgment in favor of appellees is still proper. In a mixed motive case where one motive for dismissal is related, but the other is unrelated, to first amendment practices "the sole question [is] whether the unrelated motive was an independently effective one." Jones, 727 F.2d at 1336. Appellees stated that the decision to privatize county services, which led to appellants' dismissal, was motivated by a desire to save money. Both the deposition testimony of the appellees and County Manager Carl Moore, and the objective facts established by the record support this assertion.
 
 
 18
 Once the decision to privatize had been made, the Board invited anyone who wished to do so to submit a bid on the contract for these services. The Board was under no legal obligation to engage in such a competitive bidding process. The logical conclusion to be drawn from the fact that the Board did solicit such bids is that they were in fact motivated by a desire to save money--they were seeking the lowest bidder.
 
 
 19
 Finally, the results of the Board's actions substantiated its claim that economics was the motivating force behind the privatization scheme. By privatizing county services, and by seeking the lowest bidder for those services, the appellees saved the county at least $5,290.84.
 
 
 20
 For the reasons set forth herein, the judgment of the district court is
 
 
 21
 AFFIRMED.