915 F.2d 1564
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Roger M. LEACHMAN, Plaintiff-Appellant,
v.
The RECTOR and VISITORS of the UNIVERSITY of VIRGINIA, Ray
W. Frantz, Jr., Julius P. Barclay, Defendants-Appellees.
 No. 88-1325.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1990.
Decided Oct. 16, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CA-87-51)
 James McCarrell Hingeley, Jr., Charlottesville, Va., for appellant.
 Richard C. Kast, Assistant Attorney General, Richmond, Va., (argued) for appellees, Mary Sue Terry, Attorney General, C. Tabor Cronk, Assistant Attorney General, Richmond, Va., on brief.
 W.D.Va.
 691 F.Supp. 961
 AFFIRMED.
 Before WIDENER, PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Roger M. Leachman appeals the district court's entry of summary judgment against him in his case claiming retaliatory discharge from employment against the University of Virginia, the University Librarian, Ray W. Frantz, Jr., and the head of the library's Rare Book Department, Julius P. Barclay. We agree with the district court's decision, and we affirm.
 
 I.
 
 2
 In reviewing the district court's grant of summary judgment, we view the evidence in the light most favorable to Leachman. See Pulliam Investment Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir.1987). Plaintiff Leachman first became employed by the Alderman Library at the University of Virginia in 1973. In 1976, Leachman was promoted to the position of Director of Reference Services for the library, pursuant to a three-year employment contract. Leachman's employment contract was renewed for successive three-year terms in 1979 and 1982.
 
 
 3
 In 1983, after continuing complaints from the staff concerning Leachman's management of the Reference Department, defendant Ray W. Frantz, Jr., the University Librarian, began an investigation of Leachman's performance. After learning that all but one of the faculty members in the Reference Room had problems with Leachman's management, and after three of the persons interviewed provided written comments describing in detail the problems they perceived, Frantz removed Leachman from the position of Director of Reference Services and assigned him to the newly created position of Senior Reference Librarian, effective February 1, 1984.
 
 
 4
 By letter of February 24, 1984, Leachman initiated a grievance with the University's Senate Committee on Faculty Relations. Pursuant to the suggestion of the chairman of the mediation committee to which Leachman's grievance was assigned, Frantz agreed to transfer Leachman to the library's Rare Book Department if Leachman so desired. Leachman agreed to the transfer and the move became effective July 1, 1984.
 
 
 5
 In addition, by a letter of July 4, 1984, Frantz recounted Leachman's poor performance in the Reference Department since February 1, 1984, and informed Leachman that his three-year renewable appointment was being changed to a one-year renewable appointment. Frantz's letter also notified Leachman that his performance over the next two years would be evaluated and, if it continued to be unacceptable, his appointment would not be renewed beyond June of 1986.
 
 
 6
 In October of 1986, Leachman began a second grievance with the Senate Committee on Faculty Relations, based on Frantz's decision to change the duration of Leachman's employment contract from three years to one year. Frantz asked defendant Julius P. Barclay, Leachman's supervisor in the Rare Book Department, to provide information concerning Leachman's performance in the Department, which Frantz received on November 4, 1986. Barclay's memorandum identified several specific problems with Leachman's performance.
 
 
 7
 At the end of November 1986, believing that a possible misuse of funds was present, Leachman notified the Joint Legislative Audit and Review Commission (JLARC) of the Virginia General Assembly of what he claimed to be questionable procurement practices at Alderman Library. In January 1987, Barclay provided Leachman with a written evaluation that assessed Leachman's performance as "seriously deficient," the lowest possible rating. Before providing the evaluation to Leachman, Barclay consulted two other library employees concerning the evaluation's accuracy and was told that the rating was appropriate. Leachman did not receive the customary annual salary increase in July 1987.
 
 
 8
 Based on Barclay's evaluation and Leachman's continuing inappropriate conduct in the library, which Frantz personally observed, Frantz decided in February 1987 to consider not renewing Leachman's contract beyond June 30, 1988. In a letter dated March 2, 1987, Frantz notified Leachman of his concerns and provided Leachman with an opportunity to respond. After receiving further information from Leachman, Barclay, and others, Frantz decided not to recommend renewal of Leachman's contract and sent Leachman a letter to that effect, dated June 29, 1987. The next day Leachman initiated a third grievance with the Senate Committee on Faculty Relations, based in part on Frantz's decision not to recommend renewal of his contract.
 
 
 9
 In September of 1987, Leachman brought this action under 42 U.S.C. Sec. 1983, alleging that he was terminated "in retaliation for exercising his rights under the First Amendment to the United States Constitution to pursue his grievance against Defendant Frantz with the University of Virginia Faculty Senate Committee and to report information to an agency of the Virginia General Assembly concerning misuse of public funds...." The district court granted summary judgment for defendants, and Leachman appeals.
 
 II.
 
 10
 For Leachman's discharge to constitute a violation of his free speech rights under the first amendment, the speech in issue must be protected under the first amendment, and the protected speech must have been the "but for" cause of his discharge. See Johnson v. Town of Elizabethtown, 800 F.2d 404, 406 (4th Cir.1986). The district court found that, on the record before it, Leachman could not satisfy this two-prong test with respect to either his institution of the grievances or his communication to JLARC. We address in turn each possible basis for Leachman's action.
 
 
 11
 To be protected under the first amendment, a public employee's speech must involve a matter of public concern. Id. This is because
 
 
 12
 when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
 
 
 13
 Connick v. Myers, 461 U.S. 138, 147 (1983). Whether or not the speech that allegedly led to a discharge touched on a matter of public concern is a question of law, Daniels v. Quinn, 801 F.2d 687, 689 (4th Cir.1986), and the district court determined that, as a matter of law, Leachman's use of the University's grievance process was in furtherance of a purely personal interest. Thus, because Leachman's pursuit of his grievances did not constitute protected speech, the district court concluded that "it cannot be the subject of a retaliatory discharge claim based on the first amendment."
 
 
 14
 Leachman does not challenge on appeal this aspect of the district court's decision. Instead, he attempts to create a genuine issue of material fact only as to the second prong of the Johnson test, causation, by disputing defendants' denial "that Leachman's speech in the internal grievance proceedings or to JLARC was a motivating factor in his dismissal." (Appellant's Brief at 6.) Because the district court correctly concluded that Leachman's use of the grievance process was not protected speech, see Daniels, 801 F.2d at 690 ("personal grievances about working conditions do not qualify as matters of public concern"), whether or not defendants discharged Leachman in retaliation for his institution of the grievances is immaterial.
 
 III.
 
 15
 As for Leachman's communication with JLARC, the district court was willing to assume that "speech on this topic may well be considered to be a matter of public concern." The court nevertheless granted summary judgment for defendants, however, because "plaintiff is able to do no more than to point to two bits of circumstantial evidence: he communicated with JLARC and subsequently a decision was made not to renew his contract." Thus, the district court found that Leachman was not "able to point to disputed facts which could possibly establish such a causal link."
 
 
 16
 We agree with the district court that Leachman has offered no evidence to establish the requisite causal connection between his communication to JLARC and his discharge. To resist defendants' motion for summary judgment, Leachman must offer evidence sufficient for a jury to return a verdict for him at trial, in accordance with the substantive evidentiary standard of proof. See Anderson v. Liberty Lobby, 477 U.S. 242, 249, 252 (1986). A jury verdict on the issue of causation must be supported by " 'reasonable probability,' " not mere " 'possibility.' " Johnson, 800 F.2d at 406 (quoting Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir.1982)).
 
 
 17
 Here, Leachman has done nothing more than allege that defendants terminated his employment due to his communication with JLARC. Indeed, there may be considerable inconsistency in Leachman's even alleging a causal connection, for his own deposition indicates that he believed as early as 1984, some two years before his communication with JLARC, that Frantz intended to terminate him. Leachman stated that he believed Frantz "would have tried to terminate me on the basis of the grievance alone." In addition, although both Frantz and Barclay admitted in their affidavits that each suspected individually that Leachman was the JLARC informant,[1] Leachman himself admitted that he had no information, either direct or indirect, that Barclay and Frantz even discussed who it was that contacted JLARC. Thus, the record is devoid of any probative evidence that Leachman's communication with JLARC was the "but for" cause of his discharge.
 
 
 18
 Instead, the record is replete with documented evidence of defendants' dissatisfaction with Leachman's work, some of which goes back even before the filing of any grievances, and long before Leachman's communication with JLARC. We have before us a record almost identical to the one we evaluated in Johnson, although here we review a grant of summary judgment instead of a judgment notwithstanding the verdict:[2]
 
 
 19
 In this case, only [plaintiff's] conjecture links her arguably protected speech to the discharge. There is no proof that [plaintiff's communications] were discussed in the Board's discharge deliberations. At most, testimony established that some Board members were aware of some of these issues....
 
 
 20
 Moreover, the evidence was overwhelming that [plaintiff's] discharge was based on reasons other than her arguably protected speech.
 
 
 21
 Johnson, 800 F.2d at 406-07.
 
 
 22
 Leachman has failed to set forth "specific facts showing that there is a genuine issue for trial" as to an essential element of his claim. Fed.R.Civ.P. 56(e). Although summary judgment may be "seldom appropriate in cases wherein particular states of mind are decisive," Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979), Leachman cannot go to trial merely by "asserting that the jury might, and legally could, disbelieve the defendant's denial...." Anderson v. Liberty Lobby, 477 U.S. at 256.
 
 
 23
 Accordingly, the judgment of the district court is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Frantz and Barclay also stated that they did not actually know that Leachman was the JLARC informant until this action was filed. In addition, both stated that their suspicion that Leachman was the informant caused them to give Leachman additional leeway in employment decisions because they felt he would try to claim retaliation if they took any action he viewed as unfavorable
 
 
 [2]
 "[T]he 'genuine issue' summary judgment standard is 'very close' to the 'reasonable jury' directed verdict standard." Anderson v. Liberty Lobby, 477 U.S. at 251