801 F.2d 687
 35 Ed. Law Rep. 46
 Carmalita B. DANIELS, Appellant,
v.
Ben D. QUINN, individually and in his official capacity as
Superintendent of the New Bern-Craven County Board
of Education; E. Susan Hill; New
Bern-Craven County Board of
Education, Appellees.
 No. 85-2403.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 17, 1986.
Decided Sept. 22, 1986.
 
 Donnell Van Noppen, III (Michael G. Okun, Smith, Patterson, Follin, Curtis, James & Harkavy, Raleigh, N.C., on brief), for appellant.
 Benjamin G. Alford and David S. Henderson (Henderson, Baxter & Alford, P.A., New Bern, N.C., on brief), for appellees.
 Before SPROUSE and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 WILKINSON, Circuit Judge:
 
 
 1
 Carmalita Daniels formerly worked as a teacher's aide in the New Bern-Craven County public schools. In 1982, federal funding cuts led the local Board of Education to eliminate her position and those of 33 other aides. All of the aides, except Daniels and two others, were later rehired for other positions. Daniels contends that the decision not to rehire her was based on statements she made to a member of the Board and that the decision consequently violated her rights of free speech and equal protection. The district court granted summary judgment for the defendants. We affirm.
 
 I.
 
 2
 While Daniels was working as a teacher's aide, she enrolled in a course at a local community college. The instructor, Jane Atkinson, was a member of the Board of Education. During registration for the course, Atkinson casually asked Daniels, "How is school this year?" Daniels replied by noting that she had not yet received some materials for a remedial reading course. Atkinson promised to look into the matter.
 
 
 3
 When Atkinson contacted Ben Quinn, superintendent of the Board, Quinn referred the matter to the school principal. Quinn also asked the principal to tell Daniels that she should bring such inquiries through administrative channels. The principal did so. As for the teaching materials, later investigation showed that they were no longer in print.
 
 
 4
 Starting with the 1982-83 school year, the New Bern-Craven County public schools received no federal funds for "Title I" teacher's aides. As a result, the Board of Education eliminated those positions. Superintendent Quinn then asked all principals to submit recommendations about whether the aides in their schools should be rehired for another position. The principal of the school where Daniels worked did not recommend her; Quinn did not rehire her.
 
 
 5
 Daniels alleges that the principal's decision not to recommend her and Quinn's decision not to rehire her resulted from the incident with Board member Atkinson. The defendants argue in reply that those decisions resulted from unsatisfactory work by Daniels, from persistent conflicts between Daniels and her principal, and from her recurring tardiness. Of course, in reviewing the district court's grant of summary judgment, we must take the facts in the light most favorable to Daniels. Accepting her account of the facts, we find that the district court's grant of summary judgment was correct.
 
 II.
 
 6
 The Supreme Court has repeatedly held that public employees, including school teachers, cannot be fired in retaliation for exercising their rights under the First Amendment. See, e.g., Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Those holdings do not help Daniels, however, because the speech that allegedly led to her misfortune was not the kind that the Court has shielded from adverse employer action.
 
 
 7
 To determine whether the First Amendment shields a public employee from discharge for protected speech, we must use a three-part inquiry. (Since each part affords a possible independent basis for judgment, the order of inquiry may vary with the circumstances of the case.)
 
 
 8
 The first step is to ask whether the speech was about a matter of legitimate public concern. This question is one of law, not of fact. Jones v. Dodson, 727 F.2d 1329, 1334 (4th Cir.1984).
 
 
 9
 If the speech was about a matter of public concern, the question becomes whether the employee would have been discharged "but for" the speech. The defendant-employer will not be liable if the discharge would have occurred for other reasons, such as the plaintiff's own incompetence. This classic motivational question is one of fact. The employee bears the burden of demonstrating that protected speech was a motivating factor in the discharge. The burden then shifts to the employer to show that it would have reached the same decision even in the absence of the protected conduct. Mt. Healthy v. Doyle, 429 U.S. at 287, 97 S.Ct. at 576.
 
 
 10
 If protected speech was the "but for" cause of the discharge, courts must still inquire whether the degree of public interest in the employee's statement was nonetheless outweighed by the employer's responsibility to manage its internal affairs and provide "effective and efficient" service to the public. If so, then the employer will not be liable. This question is ultimately one of law. Connick v. Myers, 461 U.S. 138, 150-54, 103 S.Ct. 1684, 1691-93, 75 L.Ed.2d 708 (1983).
 
 
 11
 In the present case, we finish at the first step. The speech at issue here was not about a matter of public concern as the Supreme Court has defined that term in Connick. As the Court made clear, federal courts cannot intrude on the personnel decisions of public employers unless the speech falls into this category. The Court made equally clear that the category of "matters of public concern" does not include every bureaucratic complaint:
 
 
 12
 To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.
 
 
 13
 461 U.S. at 149, 103 S.Ct. at 1691.
 
 
 14
 In accordance with the Court's holding in Connick, this circuit has held that matters of public concern for these purposes must relate to wrongdoing or a breach of trust, not ordinary matters of internal agency policy. Jurgensen v. Fairfax County, 745 F.2d 868, 888 (4th Cir.1984); id. at 890 (Ervin, J., concurring). For example, personal grievances about working conditions do not qualify as matters of public concern. Lewis v. Blackburn, 759 F.2d 1171 (4th Cir.1985).
 
 
 15
 The Jurgensen case presented the claim of a police department employee who disclosed an internal report to a newspaper. The report identified low morale and other problems in the department's Emergency Operations Center. Despite the undoubted public importance of the Center, the court found that the report was not a matter of public concern:
 
 
 16
 It found no illegal action; it identified no abuse of authority or power; it referred to no evidence of corruption or waste; it pointed to no discrimination among employees. In short, it was simply an internal administrative review report.
 
 
 17
 745 F.2d at 871.
 
 
 18
 The same is true of Daniels' complaint. She contends, however, that the late arrival of remedial reading materials is a matter of public concern because it affects her ability, and that of others, to teach. The identical point can be made about innumerable conditions at a school, including, for example, the number of teacher aides, the tightness of class scheduling, the size of blackboards, or the adequacy of laboratory equipment. Questions of this sort do not belong in federal court. They are best resolved by local school boards and individual school administrators. To accord to all such grievances the status of protected speech is to invite a measure of educational involvement that federal tribunals are ill equipped to undertake.
 
 
 19
 Daniels made her comments to an elected member of the New Bern-Craven County Board of Education. That fact is part of the total "content, form and context of a given statement" which a reviewing court must consider. Connick v. Myers, 461 U.S. at 142, 103 S.Ct. at 1687. Speech does not, however, become of public concern under Connick solely because it is communicated to a public official. To hold otherwise would transform every personal grievance into protected speech whenever it was spoken to someone in office. The considerations that have led the Supreme Court to delimit the protection accorded public employees under the Free Speech Clause apply equally to the right to petition. The balance struck "reflects both the historical evolvement of the rights of public employees, and the common-sense realization that government offices could not function if every employment decision became a constitutional matter." Connick, 461 U.S. at 143, 103 S.Ct. at 1688.
 
 III.
 
 20
 In addition to her free speech claim, Daniels brings an equal protection claim. She alleges that she was sanctioned for speaking to a Board member while other employees who complained to Board members were not. Her claim must fail, however. This circuit has noted that not every difference in the treatment of public employees "rises to the level of a constitutional deprivation either under equal protection or due process." Clark v. Whiting, 607 F.2d 634, 638 (4th Cir.1979). The court in that case went on to explain that "absent such impermissible sex or racial discriminations or First Amendment restraints--clear violations of positive express constitutional or statutory mandate--'[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.' " Id. at 639. See also McElearney v. Univ. of Illinois, 612 F.2d 285 (7th Cir.1979).
 
 
 21
 Daniels does not allege that she was discriminated against on the basis of race, sex, religion, or any such impermissible standard. We have already determined that the failure to rehire her did not violate the First Amendment. Hence, the district court appropriately granted summary judgment for defendants on the equal protection claim.
 
 
 22
 The judgment of the district court is hereby
 
 
 23
 AFFIRMED.