**Michael PIERSON, Plaintiff,**

v.

**HOUSING AUTHORITY OF the CITY OF GRAFTON, et al., Defendants.**

Civ. A. No. 91–0065–C.

United States District Court, N.D. West Virginia.

Aug. 24, 1992.

Robert J. O'Brien, Buckhannon, W.Va., for plaintiff.

Richard M. Yurko, Jr., Clarksburg, W.Va., for defendants.

## ORDER

MAXWELL, Chief Judge.

Plaintiff in the above-styled civil action seeks recovery pursuant to 42 U.S.C. § 1983 and pendent state law claims for the allegedly improper termination of his employment with Defendant Housing Authority of the City of Grafton ("Housing Authority"). By Order entered June 23, 1992, this Court denied Plaintiff's Motion for Summary Judgment regarding the § 1983 claim. Defendants on July 9, 1992 filed a Motion for Summary Judgment, to which Plaintiff responded on July 30, 1992. Defendants filed a reply on August 7, 1992. Although the apparent focus of the present dispositive motion is the § 1983 cause of action, the Court is of the belief that consideration of the Motion for Summary Judgment will necessarily incorporate the issues of the other causes of action. A review of all matters of record demonstrates that the Motion is ready for disposition by the Court.

As a preliminary matter, the Court notes that Plaintiff on August 11, 1992 filed a Motion to Supplement the Pleadings in which Plaintiff expresses a desire to assert a claim pursuant to the West Virginia Whistle Blower Act. The Court will consider the Motion as a motion seeking leave to amend pursuant to subsection (a) of Rule 15, Federal Rules of Civil Procedure. This civil action has been pending for over one year, and trial had been scheduled for August 3, 1992. For good reasons apparent, by Order entered July 29, 1992, the trial was continued generally. The Court on April 6, 1992 entered a scheduling order directing that amendments to the pleadings be made no later than April 15, 1992. The deadlines for discovery and for filing dispositive motions have also expired. Plaintiff's proposed amendment is untimely, and it is, accordingly,

ORDERED that Plaintiff's Motion for Leave to Amend be, and the same is hereby, DENIED.

Motions for summary judgment under Rule 56, Federal Rules of Civil Procedure, impose a difficult standard on the movant, for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. FDIC,* 906 F.2d 972, 974 (4th Cir.1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]" after examining the record as a whole. *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that the facts

might affect the outcome of the suit under applicable law, as well as being genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action,'" which procedure is to be "construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

■ The Court has previously summarized the applicable facts of this dispute in its June 23, 1992 Order. Accordingly, they will not be repeated, except to the extent necessary. The most important facts may be summarized as follows: 1) Plaintiff in October 1990 conducted research and authored reports concerning the allocation of costs incurred during relocation of Defendant Housing Authority's tenants; 2) The Board of Commissioners of Defendant Housing Authority passed a resolution on October 31, 1990 which established a "chain of command" regarding personnel matters; 3) Plaintiff provided Defendant Lake with his reports on November 10, 1990; 4) Defendant Lake adopted a position regarding allocation of relocation costs contrary to the view of Plaintiff; 5) Plaintiff discussed this subject with a tenant of Defendant Housing Authority in early April 1991; 6) Very shortly thereafter, Plaintiff consulted an attorney regarding this issue; 7) Plaintiff subsequently discussed his views on this matter with the Chairman of the Board of Commissioners; 8) Defendant Lake terminated Plaintiff's employment on April 12, 1991; and 9) This decision was affirmed by Defendants Robinson, Evans, Marchase, Murray, and Strader while acting in their capacities as members of the Board of Commissioners.

Plaintiff asserts that he was fired in retaliation for exercising his First Amendment rights to address a matter of public concern; namely, possible improprieties on the part of Defendant Lake and Defendant Housing Authority. Defendants assert that Plaintiff's employment was terminated due to insubordination and failure to abide by the applicable chain of command. The dispute forces the Court to examine the intersection of a public employee's First Amendment rights and a public employer's ability to maintain discipline and a productive work environment.

This inquiry demands that this Court strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Analysis of such a claim as Plaintiff's entails a three-step process. *Daniels v. Quinn*, 801 F.2d 687, 689 (4th Cir.1986). The Court must first determine, as a matter of law, whether Plaintiff's statements concerned matters of legitimate public, rather than private, interest. *Id.; Connick v. Myers*, 461 U.S. 138, 145–48, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983). This is "determined by the content, form, and context of a given statement...." *Id.* at 147–48, 103 S.Ct. at 1690–91. In this Circuit, this inquiry focuses on allegations of "wrongdoing or a breach of trust, not ordinary matters of internal agency policy." *Daniels*, 801 F.2d at 690 (citing *Jurgensen v. Fairfax County*, 745 F.2d 868, 888, 890 (4th Cir.1984)). Also, of the three aspects of this first inquiry, content is the most important factor. *Arvinger v. Mayor and City Council of Baltimore*, 862 F.2d 75, 79 (4th Cir.1988) (quoting *Jackson v. Bair*, 851 F.2d 714, 720 (4th Cir.1988)).

If the Court determines that the statement involved a matter of public concern, Plaintiff must then establish that he would not have been discharged "but for" his speech. *Daniels*, 801 F.2d at 687. Plaintiff must come forth with sufficient facts to permit a determination that his statements were a substantial motivating factor in his employment termination. *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Defendants then must come forward with enough facts to demonstrate, by a preponderance of the evidence, that Plaintiff would have been fired even in the absence of his comments. *Id.*

However, establishment of "but for" causation does not end the inquiry. The Court must finally determine, as a matter of law, whether Defendants' interest in maintaining internal order and carrying out the public mission of Defendant Housing Authority outweighs the public interest in Plaintiff's comments. *Daniels*, 801 F.2d at 689–90. Additionally, this Court must inquire "whether [Plaintiff's] speech so disrupted the employer's functioning as to justify the imposition on the speaker's first amendment rights." *Arvinger*, 862 F.2d at 77.

As the Fourth Circuit has previously noted, "First Amendment protection is invoked most often by a public employee when the employee attempts to contribute to the debate on his or her governmental employer by criticizing that employer. Such criticism is, in turn, both a matter of public concern and an attack on the employer." *Id.* at 78 (citing cases). As this observation makes clear, Plaintiff's statements, regardless of his motivation, may legitimately be construed as something more than a contribution to public debate and, contrary to his argument, are not absolutely protected.

Although the precise language of Plaintiff's comments is unknown, he apparently expressed disagreement with the position taken by Defendant Lake and warned of the possible consequences of the policies implemented by Defendant Housing Authority. To the extent that Plaintiff criticized the performance of a public official and questioned the propriety of actions taken by a governmental entity, his comments clearly involved a matter of public concern. *See Connick*, 461 U.S. at 147–49, 103 S.Ct. at 1690–91; *Arvinger*, 862 F.2d at 79; *Daniels*, 801 F.2d at 690. The fact that Plaintiff made these comments to individuals or small groups, as opposed to the media or to the public generally, does not alter this conclusion. *See Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (private comments regarding discrimination, a matter of public concern, are entitled to First Amendment protection). Accordingly, the Court must examine the facts which motivated Plaintiff's termination.

It is Plaintiff's burden to come forward with sufficient facts to demonstrate, when viewed in his favor, that his comments constituted a substantial factor in Defendants' decision to terminate his employment. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *Daniels*, 801 F.2d at 689. Plaintiff's evidence in this regard is weak. He alleges that Defendant Lake mentioned his comments, along with violation of relevant policies, as the reason for his April 12, 1991 dismissal. This unsubstantiated assertion is contradicted, at least implicitly, by the affidavit submitted by Defendant Lake, who states that "Plaintiff was discharged for violating the Authority's policy on proper use of the chain-of-command." The only other facts in the record before the Court which support Plaintiff's position are: 1) his disagreement with Defendant Lake regarding housing policy; and 2) the close proximity in time between his comments and his discharge.

Viewing these facts in Plaintiff's favor, the Court is convinced that, as a matter of law, Plaintiff has failed to demonstrate that his comments played a substantial role in the determination to discharge him from employment with Defendant Housing Authority. Assuming *arguendo* that Plaintiff has carried his burden, he has been unable, in this Court's view, to rebut Defendants' proof that the means by which he made known his views, rather than the exercise of his First Amendment rights, was the

sole motivation for his discharge. Defendants Lake, Robinson, Marchase, Murray, and Strader have all sworn under oath that Plaintiff was fired due to insubordination and a failure to comply with applicable rules. Plaintiff's sole response to these affidavits has been to claim that these oaths are without legal effect. The Court finds Plaintiff's argument unpersuasive. Exercise of First Amendment rights does not provide an impenetrable shield to protect Plaintiff from dismissal. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. It has been stated:

> The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct [exercise of First Amendment rights]. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a[n employment] decision ... on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.

*Id.* at 285, 97 S.Ct. at 575.

To the extent that Plaintiff argues that the chain-of-command resolution of the Board of Commissioners is improper, or otherwise inapplicable to Plaintiff's conduct, the Court concludes that these arguments are immaterial. "Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." *Connick,* 461 U.S. at 146–47, 103 S.Ct. at 1689–90 (citations omitted). A review of the record demonstrates that Plaintiff was fired, in laymen's terms, for "going over the head" of Defendant Lake, his supervisor. Although discussing a matter of public concern, Plaintiff also clearly was making a grievance against Defendant Lake,

even if his comments were not cast in these terms. *See Arvinger,* 862 F.2d at 78. As such, his actions clearly violated the personnel policy in the resolution. His actions apparently created a great deal of agitation among the commissioners, who are the people to whom Defendant Lake must ultimately answer. Just as Plaintiff may have mistakenly criticized Defendant Lake, in that no improprieties regarding the policies of Defendant Housing Authority have ever been made public, mistaken application of the personnel policy to Plaintiff's actions, or Defendants' mistaken interpretation of his motivation, does not help his cause. This Court seeks only to ensure that Plaintiff was not impermissibly penalized for exercising his First Amendment rights.

Although the Court does not need to take the third step in the analysis of Plaintiff's claims, the Court notes that, assuming Defendants based their decision on Plaintiff's comments, the opinion in *Connick* persuasively indicates that the decision was proper. The *Connick* opinion held that government employers have legitimate interests in maintaining an efficient, cohesive work environment. *Connick,* 461 U.S. at 150–54, 103 S.Ct. at 1691–94. As such, a government employer may discharge an employee on the basis of protected First Amendment expression if dismissal is justified by the above-mentioned concerns. The extent to which the employer must justify the discharge varies according to the nature of the employee's expression. *Id.* at 150, 103 S.Ct. at 1691.

Due to the similarities in the present dispute and the one presented in *Connick,* the Court believes that a fairly detailed examination of the decision is warranted. In *Connick,* a government employee was informed that she was to be reassigned duties within her office, a move which the employee strongly opposed. The employee subsequently circulated a questionnaire in the office which contained expressions meriting First Amendment protection under *Pickering* and its progeny. However, the questionnaire also contained inquiries which clearly challenged the authority of the employee's supervisors and which car-

ried a danger of sowing dissent within the workplace. The employee was subsequently fired for refusing to accept the transfer and for insubordination, based on her preparation of the questionnaire.

In upholding the employee's termination on the basis of disruption of the work environment, the Supreme Court noted:

> When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Furthermore, we do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.

*Id.* at 151–52, 103 S.Ct. at 1692. The Supreme Court placed great importance on factors such as the manner and place in which the employee made known her views, and the context in which the dispute arose. *Id.* at 152–53, 103 S.Ct. at 1692–93. Violation of office policy would also be an important consideration. *Id.* at 153, 153 n. 14, 103 S.Ct. at 1693, 1693 n. 14.

In conclusion, the Court stated, in a passage which appears very relevant to the present dispute:

> Our holding today is grounded in our longstanding recognition that the First Amendment's primary aim is the full protection of speech upon issues of public concern, as well as the practical realities involved in the administration of a government office. Although today the balance is struck for the government, this is no defeat for the First Amendment. For it would indeed be a Pyrrhic victory for the great principles of free expression if the Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs were confused with the attempt to constitutionalize the employee grievance that we see presented here.

*Id.* at 154, 103 S.Ct. at 1694.

An examination of all matters of record, including the trial exhibits submitted by Defendants, demonstrates that this Plaintiff had a turbulent employment history at Defendant Housing Authority. It is also apparent that he had an ongoing dispute with Defendant Lake, his immediate supervisor. In a memorandum dated May 22, 1990 from Defendant Lake to Plaintiff, Defendant Lake noted the existence of communication problems between herself and Plaintiff, imposed an oral reprimand for usurping her duties of signing contracts, and imposed a written reprimand for usurping her duties regarding the scheduling of contract work. This last infraction apparently hampered the furtherance of Defendant Housing Authority's public mission. The memorandum concluded:

> It is the responsibility of [Defendant Lake] to supervise the C.I.A.P. program. It is the responsibility of [Plaintiff] to assist [Defendant Lake] in the smooth and efficient running of the program and not to constantly place stumbling blocks in the way of the director. This has been the situation in the past few months. This adversarial situation will not be allowed to continue and if it does will result in the next occurance [sic] constituting three (3) days off without pay.

The conflict between Plaintiff and Defendant Lake was again noted in a memorandum dated September 14, 1990. Defendant Lake referenced a prior conversation between these two parties which "involved your attitude toward me and your apparent desire to discredit me as a director and the integrity of the Housing Authority." Plaintiff had apparently received a warning during the conversation regarding the consequences of further insubordination. Defendant Lake mentioned a letter, authored by Plaintiff, published in a local newspaper which "has brought ill reflection upon the Housing Authority, the Board of Commissioners, and the Director." Defendant Lake stated, "These are all situations that go beyond the realm of the proper chain of command. You have been repeatedly cautioned about your disregard of the proper chain of command and the consequences if you did not adhere to them." Plaintiff was placed on administrative leave for three (3) days and warned, "You are notified that with this action, any further breach of Per-

**602**

sonnel Policy, memo, directive or instruction will result in your dismissal."

Against this background, the Court cannot find that Defendants improperly discharged Plaintiff from his employment. The First Amendment does not insulate Plaintiff from the consequences of continuously challenging the authority of Defendant Lake, his supervisor, and continuously ignoring applicable regulations. Plaintiff cannot properly cloak himself with the First Amendment and then be allowed to introduce further instability into the workplace at Defendant Housing Authority. There is no indication that Plaintiff ever mentioned his concerns to Defendant Lake other than when he presented the results of his research. Nevertheless, he consulted an attorney, who is the relative of a tenant of Defendant Housing Authority, regarding these concerns. Plaintiff then contacted the Chairman of the Board of Commissioners after work hours on a Friday to express his disagreement with the policies of his superior and of the Defendant Housing Authority. He apparently issued dire warnings of criminal and civil penalties as a result of these policies. Defendant Lake was then forced to justify her position in an emergency meeting with her supervisors. Under the circumstances, it is apparent that Plaintiff was not motivated solely by concern regarding a matter of public interest. He attempted to further undermine his supervisor's position and to further destabilize the working relationships at his place of employment. The First Amendment does not mandate that Defendants tolerate this type of insubordinate activity. Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment be, and the same is hereby, GRANTED regarding Plaintiff's cause of action brought pursuant to 42 U.S.C. § 1983.

Although resolution of Defendants' dispositive motion in all likelihood marks an end to this civil action, the Court does not make a final decision regarding any of the state law causes of action alleged in Plaintiff's Complaint. Subsection (c) of 28 U.S.C. § 1447 (West Supp.1992) states, in

pertinent part, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." In light of this provision and the contents of Plaintiff's pleadings, it is

ORDERED that this civil action be, and the same is hereby, REMANDED to the Circuit Court of Taylor County, West Virginia. In keeping with Local Rule 2.05 and 28 U.S.C. § 1447(c), the Clerk of Court is directed to send a certified copy of this Order to the Circuit Clerk of Taylor County, West Virginia.