Ronald W. SHARPE, Plaintiff,

v.

Russell O. LONG, Lucius T. Martin, William H. Granger, Jr., W. Venson Huckabee, Jerry L. Smith, Lewellyn L. Sharpe, in their individual and official capacities, and the Town of Swansea, Defendants.

Civ. A. No. 3:91–3360–21.

United States District Court,
D. South Carolina,
Columbia Division.

Oct. 20, 1992.

William Gary White, III, Kenneth W. Lobenstein, Columbia, S. Carolina, for plaintiff.

Vance J. Bettis, Columbia, S. Carolina, for defendants.

## ORDER

TRAXLER, District Judge.

This case is before the court on the motion of the defendants ("Town of Swansea" or "town") for summary judgment pursuant to Fed.R.Civ.P. 56. The complaint alleges various state and federal causes of action arising out of the termination of the plaintiff ("Sharpe") as an employee of the Town of Swansea. The town has moved for summary judgment as to all counts of the complaint, asserting that there is no issue of material fact and that they are entitled to judgment as a matter of law. After reviewing the memoranda, deposition excerpts, and affidavits submitted by the parties and holding a hearing on the motion, the court **grants** the town's motion for summary judgment as to

the federal claims, and dismisses the complaint without prejudice as to the state law claims.

## I. *SUMMARY JUDGMENT STANDARD*

The standard for granting summary judgment is well known. Fed.R.Civ.P. 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of such a material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257, 106 S.Ct. at 2514. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324, 106 S.Ct. at 2553. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

Summary judgment serves the useful purpose of disposing of meretricious, pretended claims before the court and the parties become entrenched in frivolous litigation. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987). Moreover, although summary judgment is a more extreme remedy, the courts should not be reluctant to grant summary judgment in appropriate cases; indeed, summary judgment is mandated where appropriate. *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978); *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 134 (S.D.N.Y.1989); *Burleson v. Illinois Farmers Ins.*, 725 F.Supp. 1489, 1490 (S.D.Ind.1989). In a recent trilogy of decisions—*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)—the Supreme Court has consistently reaffirmed its endorsement of pretrial resolution and summary disposition of baseless actions. These decisions reflect the mandatory nature of Rule 56. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court held:

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.' ... Rule 56 must be construed with due regard not only for the rights of person asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a

jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2554 (citations omitted).

## II. *FACTS*

The following facts are not in dispute. Sharpe is the former wastewater treatment operator of the Town of Swansea.[1] Sharpe holds a Class A certification in wastewater treatment and a Class B certification in water treatment. At all times during his employment with the town Sharpe held a full time job elsewhere: first at Teepak Co., and later at Westinghouse. Sharpe performed his duties for the town in his off hours. He was paid $300 per month for his services, and he spent, on average, one to three hours a day performing his duties for the town. (Sharpe Dep. at 12–20).

Hoffman, the former police chief, was responsible for the town's water system. After Hoffman was fired, Sharpe offered to take over Hoffman's water responsibilities for an additional $5 per day (approximately $150 per month).[2] The town refused his offer. (Sharpe Dep. at 24–27). Without notifying the town that he was relinquishing his water responsibilities, Sharpe then wrote a letter to DHEC informing them that he was no longer in charge of the town's water system, but he would remain in charge of the town's wastewater system. The letter reads in full:

Dear Mr. Boland:

I, Ronald W. Sharpe, hear by informing you that I am no longer responsible for the water system at the Town of Swansea, but still will be responsible for the wastewater

system at Swansea. Wastewater Certification # 2676 Water Certification # 1330

Sincerely,

Ronald W. Sharpe

(Defs.' Ex. 1). The letter was dated October 4, 1990, eight days after Hoffman was fired. When questioned as to what prompted him to write the letter, Sharpe responded:

Well, I met with Mr. Boland [of DHEC] and discussed the situation of what they [the town] were doing, and he advised me of the laws and so forth, that if they [DHEC] came in and caught Greg mixing the chemicals with his trainee permit without me being present, that *I would be held solely responsible. I would lose my certification.* They were also putting him [Greg] of not ever being able to be certified in water of waste water for the State of South Carolina.[3]

(Sharpe Dep. at 29) (emphasis added).

Upon receipt of Sharpe's letter, Boland contacted Lucius Martin, the town clerk, about the town's apparent lack of a certified water system operator. Over the weekend of October 13–14, 1990, the town hired a certified water and wastewater operator to replace Sharpe. (Martin Dep. at 21–23). On the following Monday morning, October 16, 1990, Russell Long, the town's mayor, and Martin met with Sharpe. At this meeting, according to Sharpe, Long and Martin informed Sharpe that he could resign or be fired. (Sharpe Dep. at 35–36). Refusing to resign, The Town of Swansea fired Sharpe. (Sharpe Dep. at 36–37). In response to statements by Long that the letter to DHEC had "put the town in a bind," Sharpe answered:

---

1. Sharpe was designated on South Carolina Department of Health and Environmental Control ("DHEC") records as the town's water and wastewater systems operator, and from 1977 to 1981 he performed both functions. However, Willie Hoffman, the town's former police chief, held a Class C water system operator certificate. Accordingly, during Hoffman's reign as police chief (1981 to 1990), he assumed primary responsibility for operation of the town's water system, while Sharpe continued to be responsible for the town's wastewater system.

2. Hoffman's dismissal left Sharpe as the town's only certified water system. However, the town had a trainee, Greg Williams, who could mix the water chemicals if supervised by a certified water operator. (Sharpe Dep. at 24–25).

3. At an October 9, 1992, hearing on this motion, counsel for Sharpe specifically identified this portion of Sharpe's deposition as the verbal communication, which along with the letter to DHEC, allegedly addressing a matter of public concern.

*I said I was just protecting myself.* I said, "I advised Mr. Martin that you all were in violation," and so forth. "He [Martin] was supposed to have taken it up with you all," and so forth. "And I kept trying to tell you all that it [having a trainee mix the water chemicals without supervision] was wrong and that *I couldn't be responsible for something that I wasn't—couldn't oversee* or anything else.

(Sharpe Dep. at 35) (emphasis added).

## III. DISCUSSION

Sharpe asserts several federal and state causes of action arising out of the termination of his employment with the Town of Swansea. For purposes of this order, the court will only address the federal causes of action and will not pass on the merits of the state law claims.[4]

### A. First Amendment Claim

█ In his first cause of action, Sharpe asserts a violation of his First Amendments rights by the town and brings this cause of action pursuant to 42 U.S.C. § 1983. Sharpe alleges that he was fired because he spoke out about "the lack of any qualified person to chemically treat the Town of Swansea's drinking water." (Pl.'s Mem. Opp'n Defs.' Mot.Summ.J. at 2). According to Sharpe, the absence of a certified water treatment operator was "putting my license in jeopardy, putting the public health in jeopardy." (Sharpe Dep. at 40). At a hearing on this motion, counsel for Sharpe emphasized that Sharpe was basing his First Amendment claim solely on the letter to DHEC, and his verbal communication with Boland of DHEC concerning the town's lack of a certified water system operator. *See* FACTS *infra* note 3.

As the wastewater operator of the Town of Swansea, Sharpe was a public employee. However, the United States Supreme Court has repeatedly held that not all speech by a public employee is protected by the First Amendment:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but as an employee upon matters only of personal interest, absent the most unusual of circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). To determine whether an "employee's speech addresses a matter of public concern . . . [the court must examine] . . . the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–148, 103 S.Ct. at 1690–91. Additionally, whether an employee's speech addresses a matter of public concern is a question of law. *Id.* at 148, n. 7, 103 S.Ct. at 1691, n. 7; *Daniels v. Quinn,* 801 F.2d 687, 689 (4th Cir 1986).

Accordingly, the initial constitutional inquiry is whether Sharpe was speaking on a matter of public concern. The letter Sharpe wrote to DHEC simply informed the agency that Sharpe would no longer assume responsibility for the town's water system. The letter was effectively a resignation letter, and was treated as such by the town. When questioned by town officials as to why he wrote the letter, Sharpe replied that "I was just protecting myself." (Sharpe Dep. at 35). It is undisputed that Sharpe was designated on DHEC records as the person responsible for the town's water system. It is further undisputed that if DHEC had discovered an uncertified trainee operating the town's water system without Sharpe's supervision, he could have lost his water certification. The letter, standing alone, addressed only matters of personal interest—Sharpe's personal interest in keeping his water certification in good standing.

In *Daniels,* the Fourth Circuit declared that "personal grievances about working conditions do not qualify as matters of public

---

4. The court notes that upon dismissal of the state law claims Sharpe will not be barred by any state statute of limitations from asserting these claims in state court, provided such limitations period did not run before this lawsuit was filed. Under 28 U.S.C. § 1367(d), Sharpe's state law claims "shall be tolled while the [federal] claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." *Id.*

concern. *Id.* at 690. Although the letter does not specifically address "personal grievances about working conditions," the "content, form, and context" of the letter "as revealed by the whole record," suggests that the letter was written either: (1) to protect Sharpe from losing his water certification; or (2) as retaliation for the town's refusal to pay Sharpe an extra $5 a day to supervise the water system. Accordingly, Sharpe's letter to DHEC does not address a matter of public concern.

Sharpe, however, contends that his verbal communication with DHEC along with the letter to DHEC addresses a matter of public concern—the town's interest in having a qualified person supervise its water system. Sharpe, however, by his own deposition testimony, informed DHEC of the town's water situation to avoid being held "solely responsible" for the water system, and losing his water certification. (Sharpe Dep. at 29). As such, the same personal interest which prompted Sharpe to write the letter to DHEC also caused him to verbally communicate with DHEC. Therefore, the same conclusion of law is mandated: Sharpe's verbal communication with DHEC did not address matters of public concern.

Sharpe cannot elevate his personal grievance with the Town of Swansea to constitutional dimensions merely by stating that his communications with DHEC addressed a matter of public concern because it alerted DHEC that the town did not have a certified water operator. If this were true, any speech made by a public employee regarding public employee qualifications "would plant the seed of a constitutional case." *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691. Such an expansive view of First Amendment protection in the public employee area is not recognized:

> [W]e will not become entangled in every employment dispute merely because allegations involving free speech arise. The Constitution simply does not guarantee public employment unsullied by the potential for silly and at times unjustified termination or transfers unless premised upon specific forbidden grounds.

*Callaway v. Hafeman,* 832 F.2d 414, 416 (7th Cir.1987).

### B. *Federal Civil Conspiracy Claim*

■ Sharpe's next federal cause of action is a civil conspiracy claim brought pursuant to 42 U.S.C. § 1985(3). Section 1985(3) provides in relevant part:

> If two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The first essential element of a § 1985(3) claim requires a conspiracy of two or more persons. A failure to plead a legally cognizable conspiracy dooms the conspiracy claim. Established precedent in the Fourth Circuit states that officials of a single governmental entity acting in their official capacitates cannot "conspire" among themselves or with the entity within the meaning of § 1985(3). *Buschi v. Kirvin,* 775 F.2d 1240, 1251–1253 (4th Cir.1985); *Zombro v. Baltimore City Police Dept.,* 868 F.2d 1364, 1371 (4th Cir.1989); *Eggleston v. Prince Edward Volunteer Rescue Squad,* 569 F.Supp. 1344, 1352 (E.D.Va. 1983), *aff'd without opinion,* 742 F.2d 1448 (4th Cir.1984).

Sharpe contends that the natural defendants, all of whom are officials of the Town of Swansea, conspired to terminate him in violation of § 1985(3). Sharpe does not allege that the natural defendants were acting outside the scope of their official governmental capacities when they terminated him. Accordingly, Sharpe has failed to plead a legally cognizable conspiracy as a matter of law.

■ Even assuming that Sharpe has alleged an actionable § 1985(3) conspiracy, his claim fails because Sharpe does not fall within a class protected by § 1985(3). Regarding the § 1985(3) claim, Sharpe asks this court to "take a more expanded view of the term 'minority' to include whistleblowers. Plaintiff does not claim to belong to any other protected class with immutable characteristics." (Pl.'s Mem. Opp'n Defs.' Mot.Summ.J. at 4). Unfortunately, this is a fatal claim to

make in the Fourth Circuit: "In any event, we do not think that "whistleblowers" can be said to qualify as a class entitled to the benefits of section 1985(3)." *Buschi v. Kirven,* 775 F.2d 1240, 1258 (4th Cir.1985).

### C. *42 § 1986 Claim*

The only remaining federal cause of action is a 42 U.S.C. § 1986 claim. However, Sharpe concedes that the one year statute of limitations contained in § 1986 expired before he brought this lawsuit. (Pl.'s Mem. Opp'n Defs.' Mot.Summ.J. at 4). Accordingly, this claim is barred by the statute of limitations.

### IV. *CONCLUSION*

The undisputed facts show that Sharpe's communications with DHEC were made in his capacity as an employee of the Town of Swansea upon matters only of personal interest. As such, Sharpe's speech did not address a matter of public concern and the constitutional inquiry is at an end. Further, Sharpe failed to allege a legally cognizable civil conspiracy, or to claim membership in a class protected by § 1985(3). Additionally, Sharpe's only remaining federal claim is barred by the applicable statute of limitations. **THEREFORE, IT IS ORDERED** that the motion of the defendants for summary judgment as to all federal causes of action is **granted.** The remaining state causes of action are dismissed without prejudice.

**IT IS SO ORDERED.**