**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM SIMONS,
<u>Plaintiff-Appellant,</u>

v.

WEST VIRGINIA UNIVERSITY; WEST
VIRGINIA UNIVERSITY BOARD OF
TRUSTEES; NEIL S. BUCKLEW,
President of West Virginia

University, in his official capacity;
GERALD E. LANG, Dean of the
College of Arts & Sciences, in his
official capacity; HARVEY R.
DIAMOND, Interim Chairman of the
Department of Mathematics, in his
official capacity,
<u>Defendants-Appellees.</u>

No. 95-1712

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Robert Earl Maxwell, District Judge.
(CA-94-70-C)

Argued: March 4, 1996

Decided: May 7, 1996

Before HAMILTON, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Paul Joseph Harris, WALLACE & HARRIS, Elkins, West Virginia, for Appellant. Laurie L. Crytser, STEPTOE & JOHN- SON, Morgantown, West Virginia, for Appellees. **ON BRIEF:** Joseph A. Wallace, WALLACE & HARRIS, Elkins, West Virginia, for Appellant. Susan S. Brewer, STEPTOE & JOHNSON, Morgan- town, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

William Simons appeals the dismissal of his complaint by the dis- trict court for failure to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6). We affirm, although on reasoning slightly different from that of the district court.

I.

Simons is a tenured professor in the Math Department at West Vir- ginia University (the University). On September 10, 1992, Simons circulated a memorandum addressed to graduate students in the Math Department, responding to comments made by fellow math professor Sam Nadler regarding the termination of two employees. In the mem- orandum, Simons called Nadler "a liar" and accused him of conduct- ing a "malicious campaign to discredit the department." (J.A. at 65.) Simons concluded by exhorting the students not to "let [Nadler] demoralize you with his deprecations against the department and its faculty, and don't believe much of what he has to say." (J.A. at 65.)

In March 1993, in response to further memoranda by Simons accusing Nadler of misconduct, interim department chairman Harvey

2

Diamond instructed Simons to pursue his complaints about Nadler through the University's grievance procedure. Diamond warned Simons that further dissemination of allegations against Nadler outside the context of the grievance procedure would be considered insubordination and might warrant disciplinary action. Simons replied by circulating a memorandum asserting that Diamond's directive was invalid in that it violated Simons's First Amendment right to free speech. In response to Simons's continued propagation of memoranda, Gerald Lang, Dean of the College of Arts and Sciences, disciplined Simons for insubordination by suspending him without pay for one week. Simons appealed his suspension though the University's grievance procedure.

Simons subsequently filed this action pursuant to 42 U.S.C.A. § 1983 (West 1994), alleging that Appellees [1] had violated his First Amendment right by punishing him for speaking out against Nadler's alleged misconduct and Diamond's "unlawful" directives and that Appellees had violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to investigate his allegations against Nadler and by failing to process his grievance in a timely fashion. Appellees moved to dismiss pursuant to Rule 12(b)(6). The district court granted the motion to dismiss, concluding that Simons's First Amendment claim failed as a matter of law because his speech did not address a matter of public concern; as Simons's speech was unprotected, its truth or falsity was irrelevant, and thus Appellees could not have violated Simons's due process right by failing to investigate his allegations; and Simons's claim regarding the delay in the processing of his grievance was not actionable because Simons had failed to allege that he suffered an injury as a result of the delay.[2]

_____

[1] Simons brought suit against West Virginia University, the West Virginia University Board of Trustees, Neil Bucklew in his official capacity as President of the University, Lang in his official capacity as Dean of the College of Arts & Sciences, and Diamond in his official capacity as Interim Chairman of the Department of Mathematics. We refer to these parties collectively as "Appellees."

[2] Appellees also argued before the district court, as they do here, that they are not subject to suit because the University, its Board of Trustees, and its officers are arms of the State of West Virginia, and thus they are not "persons" within the meaning of § 1983. See Will v. Michigan Dep't

Simons now appeals, asserting that the district court erred in reaching each of these conclusions.

II.

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint, Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994), cert. denied, 115 S. Ct. 1956 (1995); such motions "should be granted only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). A court considering a Rule 12(b)(6) motion must accept as true all of the plaintiff's factual allegations and all favorable inferences that may reasonably be drawn from those allegations. See Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 114 S. Ct. 1307 (1994). Although we must assume that the plaintiff can prove all of the facts alleged in his complaint, "`it is not . . . proper to assume that [the] plaintiff[ ] can prove facts that [he has] not alleged or that the defendants have violated the . . . law[ ] in ways that have not been alleged.'" Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 221 (4th Cir. 1994) (quoting Associated Gen. Contractors v. California State Council of Carpenters, 459 U.S. 519, 526 (1983)). A motion to dismiss should not be granted"unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Lab., Inc., 7 F.3d at 1134. We review de novo the district court's decision to dismiss

_____

of State Police, 491 U.S. 58, 71 (1989) (holding that state officials are not "persons" within the meaning of § 1983 in a suit for damages). Simons counters that Appellees are more accurately likened to a municipal corporation and its officers, and as such they are "persons" amenable to suit under § 1983. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 279-81 (1977) (holding that a local school district is not an arm of the state). We agree with the district court that at the very least, Appellees may be sued for declaratory and injunctive relief even if they are arms of the state. See Will, 491 U.S. at 71 n.10 (noting that a state official sued in his official capacity for injunctive relief is a "person" within the meaning of § 1983). We need not resolve the more difficult question of whether Appellees are immune from Simons's claim for damages because we affirm on other grounds the district court's dismissal of Simons's complaint.

4

Simons's complaint for failure to state a claim upon which relief can be granted. See Randall, 30 F.3d at 522.

A.

Simons first asserts that the district court erred in dismissing his First Amendment claim on the basis that his speech did not address a matter of public concern. Simons maintains that his "comments were motivated purely by his desire to preserve the reputation of [the University] and [were made] with the express intention of maintaining the morale of the students in the Department of Mathematics." (Appellant's Br. at 2-3.) He further maintains that,"[a]s a public institution, the reputation and integrity of [the University] are issues of public concern, as is the morale of its students." (Appellant's Br. at 11.) Appellees respond that, regardless of Simons's motivations, his speech did not address a matter of public concern and so it was not protected by the First Amendment.

That the University, a public institution, "cannot condition public employment on a basis that infringes [Simons's] constitutionally protected interest in freedom of expression" is beyond question. Connick v. Myers, 461 U.S. 138, 142 (1983). Simons's interest in free expression may be limited, however, by the University's interest "`in promoting the efficiency of the public services it performs through its employees.'" Id. (quoting Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)). The determination of whether the University has infringed Simons's First Amendment right to freedom of speech is guided by a three-part inquiry. See Daniels v. Quinn, 801 F.2d 687, 689 (4th Cir. 1986). First, we must determine whether Simons's speech touched upon matters of public concern. Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 192 (4th Cir. 1994). If so, we must then proceed to the question of whether the protected speech was the "but for" cause of Simons's suspension. See id. If Simons's complaint survives this inquiry, we must turn finally to the question of whether Simons's interest in exercising his free speech right outweighs the University's interest "in providing the public service [he] was hired to provide." Stroman v. Colleton County Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992). Each part of the inquiry provides an independent basis for decision. See Daniels, 801 F.2d at 689. Thus, if we conclude that Simons's speech does not arguably relate to a matter of public con-

5

cern, we need only address that prong of the inquiry. See Connick, 461 U.S. at 146, 149-50 (noting that if employee's speech does not address a matter of public concern "it is unnecessary for us to scrutinize the reasons for [the employee's] discharge" and stating that the question of whether speech addressed a matter of public concern is "a threshold inquiry"); Arvinger v. Mayor & City Council, 862 F.2d 75, 77 (4th Cir. 1988) (noting that if the employee's speech "concerns private rather than public matters, it is not necessary to proceed to a consideration of the employer's interests"); see also Stroman, 981 F.2d at 158 (stating that court should apply balancing test when employee's speech "arguably" involves a matter of public concern). With these principles in mind, we now turn to an examination of the factual allegations contained in Simons's complaint to determine whether these allegations, if proven, would state a legally cognizable claim for violation of Simons's First Amendment right to freedom of speech.

The question of whether Simons's speech addressed matters of public concern is one of law for the court to answer. Connick, 461 U.S. at 148 n.7; Arvinger, 862 F.2d at 77. As we have previously noted, "[t]he essential question is whether the employee is speaking out as a citizen, upon matters of public concern, or as an employee, upon matters only of personal interest." Hall , 31 F.3d at 192. In other words, "the purpose of the inquiry is to prevent turning every public employee expression of private grievance into a constitutional case." Berger v. Battaglia, 779 F.2d 992, 998-99 (4th Cir. 1985), cert. denied, 476 U.S. 1159 (1986). The determination of whether employee speech addresses matters of public concern turns on the content, form, and context of the speech, as revealed by all of the circumstances. See Connick, 461 U.S. at 147-48.

We begin by examining the content of Simons's speech to determine whether it addressed a matter of public concern. In resolving the question of whether Simons's speech addressed a matter of public concern in terms of its content, we are guided by our explanation of the content inquiry in Jurgensen v. Fairfax County, 745 F.2d 868 (4th Cir. 1984):

> If the speech relates primarily to a matter of "limited public interest" and does not "seek to bring to light actual or poten-

6

tial wrongdoing or breach of public trust," centering instead on matters primarily, if not exclusively "of personal interest" to the employee such as employee grievances over internal working conditions, etc., that fact must be weighed in determining whether a matter of true public concern is involved for the "First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."

Id. at 879 (quoting Connick, 461 U.S. at 148-49). Moreover, we note, content is a "significant factor[ ]" in determining whether speech involves a matter of public concern. See id.

Here, the content of Simons's speech consisted of two complaints: first, that Nadler lied to students about the circumstances surrounding the resignation of two fellow Math Department employees; and second, that Diamond unconstitutionally instructed Simons to air his complaints about Nadler through the University's grievance procedure. These comments, viewed in the light most favorable to Simons, at most amount to personal gripes about the conduct of a fellow professor and about discipline imposed upon him as a result of his actions. Such comments simply do not relate to matters of public concern. See Connick, 461 U.S. at 148 (holding that employee's questions related to workers' trust in their supervisors, office morale, and the need for a grievance committee were mere extensions of employee's protest over her transfer to another department and as such did not relate to a matter of public concern); Kurtz v. Vickrey, 855 F.2d 723, 728-29 (11th Cir. 1988) (concluding that professor's statements criticizing university president for mischaracterizing salary increases as "good," stating inaccurately that university was at the geographical center of state, and using the term "average" incorrectly did not relate to matters of public concern); Daniels, 801 F.2d at 690 (holding that complaint by teacher to board of education member that the teacher had not received certain teaching materials did not relate to a matter of public concern, noting that although failure to receive teaching materials affected the teacher's ability to teach,"[t]he identical point can be made about innumerable conditions at a school" and concluding that "[q]uestions of this sort do not belong in federal court"); Chitwood v. Feaster, 468 F.2d 359, 360-61 (4th Cir. 1972) (noting that "bickering and running disputes with the department heads" do

7

not constitute speech on matters of public concern). Stated another way, Simons's speech did not address matters of public concern in terms of its content because Simons did not "seek to bring to light actual or potential wrongdoing or breach of public trust" on the part of Nadler or Diamond. Connick, 461 U.S. at 148-49 (concluding that employee's survey question regarding whether other employees were pressured to participate in political campaigns addressed matter of public concern); see Stroman, 981 F.2d at 157-58 (concluding that teacher's statements regarding alleged mismanagement of school budget, standing alone, would constitute speech addressing matters of public concern); Kurtz, 855 F.2d at 729-30 (concluding that professor's statements regarding university's budget priorities addressed a matter of public concern).

We next consider whether the form of Simons's speech indicates that the speech addressed a matter of public concern. While an employee's decision to speak privately rather than publicly is not dispositive of the question of whether his speech addressed a matter of public concern in terms of its form, see Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 415-16 (1979) (holding that speech does not lose its protected status merely because it is communicated privately rather than publicly); Stroman, 981 F.2d at 154, 157-58 (concluding that statements contained within internal memorandum arguably related to a matter of public concern), we cannot ignore that speech on matters of public concern frequently is made in the form of a public communication. See Hall, 31 F.3d at 193 (speech made through letters to the editor and through Freedom of Information Act requests); Chitwood, 468 F.2d at 360-61 (public criticism of college officials). Here, Simons's complaint establishes that his speech was disseminated through memoranda that were circulated to students and faculty within the Math Department alone, rather than through an airing of his concerns to the public. See Connick , 461 U.S. at 148 (noting that distribution of questionnaire to fellow employees within the district attorney's office did not constitute speech to the public). Thus, the form of Simons's speech indicates that he was speaking not as a citizen, but as an employee aggrieved over the actions of a colleague. See Kurtz, 855 F.2d at 729 (noting that professor's assertion that his speech related to matters of public concern "loses force when it is considered that he took no affirmative steps . . . to inform the public at large about[ ] the problems with which he was so gravely con-

8

cerned"). Accordingly, we conclude that the form of Simons's speech weighs against a conclusion that the speech involved a matter of public concern.

Our next consideration, an examination of the context of Simons's speech, requires an inquiry into "`the underlying circumstances, including the employee's reasons for speaking.'" Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492, 1501 (7th Cir. 1994) (quoting Smith v. Fruin, 28 F.3d 646, 651 (7th Cir. 1994), cert. denied, 115 S. Ct. 735 (1995)). Here, Simons's complaint reveals that the underlying circumstances of his speech were that Simons was personally upset by what he viewed as Nadler's lies and by Diamond's instruction that Simons relegate his complaints about Nadler to the University's grievance procedure. Even assuming that Simons can prove that his desire to maintain the morale of students in the Math Department motivated his speech regarding Nadler, this reason for Simons's speech does not establish that the speech related to a matter of public concern. See Connick, 461 U.S. at 148 (holding that issues regarding office morale do not amount to matters of public concern). And, with respect to Diamond's directive, Simons spoke out to vent his anger at being disciplined, not to remedy any abuse of public trust. See id. (holding that speech was not protected because it merely "reflect[ed] one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause celebre" (footnote omitted)). We therefore conclude that the context of Simons's speech indicates that the speech did not address a matter of public concern.

We conclude that Simons can allege no set of facts in support of his claim that his speech involved a matter of public concern. Taking the factual allegations of the complaint and all reasonable inferences that may be drawn therefrom in the light most favorable to Simons, we are compelled to reach the conclusion that neither the content, the form, nor the context of Simons's speech indicates that Simons was speaking on "any matter of political, social, or other concern to the community." Id. at 146. Because Simons's speech did not address a matter of public concern, we need not consider the remaining two prongs of the inquiry. See id. Accordingly, we affirm the district court's dismissal of Simons's First Amendment claim.

9

B.

As a corollary to his First Amendment claim, Simons asserts that Appellees violated his Fourteenth Amendment right to substantive due process by refusing to investigate his allegations against Nadler. The district court granted Appellee's motion to dismiss this claim, concluding that "[s]ince [Simons's] speech is not constitutionally protected, the accuracy of the speech is irrelevant." (J.A. at 57.) Simons fails to assert any authority to support his argument that he has a due process right to have his allegations against Nadler investigated by the University. Accordingly, we affirm the dismissal of this claim by the district court.

C.

Finally, Simons maintains that the district court erred in dismissing his claim that Appellees violated his procedural due process right by failing to process his grievance in a timely fashion. The University has established a three-tiered grievance procedure, pursuant to which the grievant first complains within the department. If not satisfied with the resolution of the grievance within the department, the grievant may appeal to the dean of the department within 15 days. The dean must rule on the grievance within 15 days of receiving a report of the grievance from the department. Thereafter, the grievant may appeal to the president of the University. The president must rule on the grievance within 15 days of receiving the recommendation of an appeal committee formed to review the grievance; however, the grievance procedure does not impose any limitation on the amount of time the appeal committee may take to generate its report. Simons argues that the district court erred in dismissing his due process claim because he properly alleged in his complaint that he had a property interest in his employment as a result of his status as a tenured professor,[3] his suspension by the University constituted a deprivation of that

_____

[3] Simons also asserts that his suspension also violated "a liberty interest in exercising his First Amendment right to free speech." (Appellant's Br. at 17.) We decline to address this argument as it was raised for the first time on appeal. See Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below.").

property interest, and this deprivation occurred without due process of law in that the appeal committee delayed in issuing a recommendation on Simons's grievance.

Appellees do not dispute that, as a tenured professor, Simons has a property interest in his employment, nor do they contend that Simons's suspension did not deprive him of a property right. Rather, Appellees maintain that Simons has not stated a claim for violation of his procedural due process right because the delay in the processing of his grievance did not injure Simons, and thus did not affect his due process right. The district court relied on similar reasoning, concluding that Simons could not allege a claim pursuant to 42 U.S.C.A. § 1983 for violation of his procedural due process right because his complaint contained no allegation that he was injured as a result of the due process violation. We reject this reasoning. Simons's failure to allege actual injury resulting from a violation of his procedural due process right does not bar him from asserting a claim under § 1983; it merely means that he may not recover more than nominal damages. See Carey v. Piphus, 435 U.S. 247, 266 (1978) (holding that "the denial of procedural due process [is] actionable for nominal damages without proof of actual injury").

Nevertheless, we conclude that dismissal of Simons's due process claim for failure to state a claim upon which relief can be granted was appropriate. Simons's complaint alleges neither that the University's grievance procedure provides an inadequate post-deprivation remedy nor that Appellees failed to abide by the requirements of the grievance procedure. Rather, Simons asserts that his due process right was violated by the delay of the appeal committee's decision. However, not only is the complaint devoid of any allegation that the delay in the appeal committee's decision was due to an intent to harm Simons, such an intent cannot reasonably be inferred from the allegations of the complaint. We are left, then, with the bare assertion that Simons has been deprived of procedural due process merely by the length of time taken to process his grievance, when the delay did not violate any requirement of the grievance procedure. This assertion, even if true, simply does not constitute a procedural due process claim. Accordingly, we affirm the dismissal of this portion of Simons's complaint.

11

III.

Having examined the factual allegations of the complaint, and all inferences reasonably drawn therefrom, in the light most favorable to Simons, we conclude that he has not stated a claim upon which relief can be granted with respect to any of the counts of his complaint. Accordingly, we affirm the district court's dismissal of his complaint.

AFFIRMED

12